IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**GERALD STEVEN MAGANO,**

Petitioner,

v.                                    Civil Action No. **3:10CV525**

**WILLIAM C. MIMS, et al.,**

Respondents.

**MEMORANDUM OPINION**

Gerald Steven Magano, a Virginia inmate incarcerated in Florida and proceeding pro se, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Magano challenges his 1977 convictions in the Circuit Court for the City of Newport News ("the Circuit Court") for two counts of rape and two counts of forcible sodomy.  Respondent has moved to dismiss on the grounds that, inter alia, the § 2254 Petition is barred by the relevant statute of limitations.  On July 22, 2011, the Court provided Magano with the appropriate Roseboro[1] notice.  Magano has not responded.  The matter is ripe for disposition.

## I.  EVIDENCE AT TRIAL

Because Magano claims that he is actually innocent and because a familiarity with the trial evidence is necessary to understanding the parties' positions with respect to the statute of limitations, it is appropriate to provide a preliminary account of the evidence

---

[1] Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975).

of Magano's guilt.  As reflected below, the evidence of Magano's guilty was overwhelming.

### A.   The Victims' Testimony

On February 2, 1977, Diane[2] was living the in the Americana Apartments in Newport News, Virginia with her husband and her eighteen-month-old son.  Diane testified that she had plans to have lunch at her apartment with her friend Vickie that day.  Around 12:20 p.m., a man came to Diane's door representing that he was from Virginia Electric and Power Company and that he needed to check the circuits in the apartment.  The man had a clipboard and he was wearing "a brownish-orange leather jacket."  (Trial Tr. 44.)

After Diane let the man into the apartment, he pulled a knife on her and forced her into the bedroom and onto the bed.  The man cut the cord from the alarm clock and used it to tie Diane's hands behind her back.  The man picked up Diane's crying child and placed him in another room.  The man removed Diane's pants and underpants. The man held a knife to Diane's throat and made her perform oral sex on him.  The man then performed oral sex on Diane.  Thereafter, he raped Diane.

While the man was in the process of raping Diane, Vickie arrived.  The man forced Vickie into the bedroom at knife point. The man directed Vickie to remove her clothes.  The man then

---

[2] Given the sensitive nature of the crimes, the Court will only refer to the victims by their first names.

directed Vickie and Diane to sexually stimulate each other. Thereafter, the man performed oral sex on Vickie and eventually raped her. The man pulled his penis out of Vickie and climaxed on her stomach. The man grabbed a tissue, wiped off her stomach, and said "'I don't want to leave any evidence.'" (Trial Tr. 47.) The man then stuck the tissue in his pocket.

The man dressed and told Vickie and Diane "' to sit still until I am well gone.'" (Trial Tr. 48.) The man grabbed his clipboard and left the apartment. Shortly thereafter, Vickie and Diane contacted the police.

On February 9, 1977, the police asked Vickie and Diane to come to the police station to view a line-up. Diane identified Magano as the rapist. Diane had no question that Magano was the man who had raped her.

Vickie provide a largely identical account of Magano's sexual assaults upon her and Diane. Vickie testified that in addition to raping her and performing oral sex upon her, Magano ran his knife over her naked body. Vickie stated the man was wearing a "reddish-brown . . . leather or vinyl jacket." (Trial Tr. 77.) Vickie was positive in her identification of Magano as the man who had raped her.

### B.   Evidence Placing Magano at the Americana Apartments at the Time of the Rapes

The prosecution introduced into evidence Diane's alarm clock, which had stopped at 12:26, when Magano cut the cord. Allen Wilson

3

testified that on February 2, 1977, around noon, he saw a Chevrolet Impala parked in the space next to his car in the Americana Apartments parking lot.

Diane Gumz testified that, on February 2, 1977, between 12:00 and 1:00 p.m., she was sitting outside of the Americana Apartments waiting for a friend. Around 12:30 p.m., she saw a man come running out the apartments. The man was wearing a "brownish colored . . . leather jacket" and carrying a clipboard. (Trial Tr. 88.) The man got into a car, grinned at Gumz, and left.

On February 4, 1977, the police brought Gumz and Wilson to a body shop where they both identified the car they had seen in the Americana parking lot the day before. The car belonged to Magano.[3] Although Magano told the police that he did not own a clipboard, the police found a clipboard in the back seat of his car.

### C.   The Defense Evidence

The defense provided some of the most compelling evidence of Magano's guilt. Although he was married and had three children, Magano testified that on the night of February 1, 1977, "I had a fantasy, a sexual fantasy, I could go out and get a woman. Someone else besides my wife." (Trial Tr. 185.) Magano asserted this vision suggested that he "[g]o and have a woman." (Trial Tr. 200.) Although Magano tried to put it out of his mind, the fantasy came

---

[3] On February 4, 1977, Magano had dropped the car off to have it painted and wanted assurances that the car could be painted that same day.

4

back even stronger on February 2, 1977.  Magano tried to fight the fantasy while he was driving around the Newport News area, but sometime after 10:00 a.m., it became so strong that he allegedly blacked out.  Magano claimed that when he woke up, he was in a different location, and drove home.  Magano arrived home at about 1:05 p.m.

Magano testified that when he was questioned by the police he admitted to owning the type of jacket the police described.  When the detectives initially accused Magano of raping Diane and Vickie, Magano testified that he stated,

> I had been there.  I did tell them that I had had sexual relations with these young women, but I described to the detectives they had picked me up.  And this is the rationalization, the only thing I could come up at the time from my mind to try to put myself in that kind of situation.  They had to pick me up.  Because I don't go around knocking on doors, raping women.

(Trial Tr. 188.)  Although at trial Magano claimed to have blacked out during the time frame that Diane and Vickie had been raped, he acknowledged that after his arrest he continued to tell the police he had consensual sex with them.  "I continued on with this story that I had first propounded to them.  Yes, I had been there, and yes, I had had sex with them, but it was by consent.  That they had invited me."  (Trial Tr. 189-90.)  Magano claimed that his memory of the events of February 2, 1977 was gradually returning and he admitted that he recognized the victims by the time of his preliminary hearing.  Additionally, Magano admitted that he

remembered being at the Americana Apartments on the morning of February 2, 1977.

Magano also testified generally about his history of blacking out. Magano stated that he had been under increasing stress in the months prior to February 2, 1977. Magano explained that he needed somebody upon whom to take out his stress. "I just couldn't hold it in. I would start -- instead of -- kicking the dog and kissing the wife, I would kick the wife and pat the dog." (Trial Tr. 195.)

Major Ramon E. de Arrigunaga testified that he spoke to Magano after Magano's preliminary hearing. Magano told the Major that he had sex with both girls, but that it had been consensual.

Not surprisingly, the jury convicted Magano of two counts of rape and two counts of forcible sodomy.

## II.   SUBSEQUENT PROCEDURAL HISTORY

### A.   State Appellate and Habeas Proceedings

On September 6, 1977, the Circuit Court entered its final judgment with respect to the convictions described above. Although Magano filed a notice of appeal, it does not appear the appeal was properly perfected. Petition for Writ of Habeas Corpus 2, <u>Magano v. Warden, Va. State Penitentiary</u>, No. 871344 (Va. filed Dec. 1, 1987).

On December 1, 1987, Magano filed a petition for a writ of habeas corpus with the Supreme Court of Virginia, wherein he complained that counsel had deprived him of his right to appeal. <u>Id.</u> ¶¶ 7, 14(c). On March 29, 1988, the Supreme Court of Virginia

6

awarded Magano the right to pursue a late appeal. <u>Magano v. Warden, Va. State Penitentiary</u>, No. 871344, at 1 (Va. Mar. 29, 1988). Specifically, the Supreme Court of Virginia granted Magano leave "to apply to this Court from an appeal from the judgments rendered on September 6, 1977, by the Circuit Court of the City of Newport News, upon convictions of two charges of rape and two charges of forcible sodomy." <u>Id.</u> The Supreme Court further stated,

> [A]ll computations of time as required by the rules of this Court and applicable statutes shall commence on the date of entry of this order or, if the said Gerald S. Magano be otherwise entitled to appointed counsel upon this appeal, from the date of entry of the order of the circuit court so appointing counsel, whichever date shall be later.

<u>Id.</u>

By an order entered on April 11, 1988, the Circuit Court appointed Robert N. Beaty to represent Magano on his belated appeal. Mr. Beaty was required to file his petition for appeal with the Supreme Court of Virginia by Monday, July 11, 1988.[4] Mr. Beaty, however, failed to file a timely petition for appeal with

---

[4] The pertinent statute provided:

> In cases where an appeal is permitted from the trial court to the Supreme Court, no petition shall be presented for an appeal to the Supreme Court from any final judgment whether the Commonwealth be a party or not, (i) which shall have been rendered more than three months before the petition is presented, provided, that in criminal cases, a thirty-day extension may be granted, in the discretion of the court, in order to attain the ends of justice . . . .

Va. Code Ann. § 8.01-671(A) (Michie 1988).

the Supreme Court of Virginia.  Therefore, on November 2, 1988, the Supreme Court of Virginia returned the record on appeal to the Circuit Court.

Magano took no further action on his criminal case for roughly the next twenty years.

## B.   State Proceedings on Magano's Claim of Actual Innocence

In 2008, the Virginia Department of Forensic Science contacted Magano and informed him that his case file contained material that possibly was suitable for DNA testing.  On April 24, 2009, the Virginia Department of Forensic Science informed Magano that the DNA testing of the evidence was complete and that he could obtain a copy of the Certificates of Analysis by contacting their office.

In a letter dated May 28, 2009, Magano wrote to the Virginia Department of Forensic Science and requested copies of the Certificates of Analysis and other documents concerning his criminal file.  On June 4, 2009, the Department of Forensic Science agreed to provide Magano with "Certificates of Analysis, dated March 21, 1977 and April 10, 2009, three Requests for Examinations forms and one worksheet transfer form."  Petition for a Writ of Actual Innocence, June 24, 2009 Letter, In re Magano, No. 091760 (Va. filed June 22, 2009).  Thereafter, Magano filed a petition for a writ of actual innocence with the Supreme Court of Virginia to which he attached the documents supplied by the Department of Forensic Science.

8

One Request for Laboratory Examination identifies Diane as Victim One and Vickie as Victim Two. Petition for a Writ of Actual Innocence, Request for Laboratory Examination Submitted by Detective R.A. Sullivan, In re Magano, No. 091760 (Va. filed June 22, 2009). The document provides the following pertinent description of the offense:

> Both victims were alleged to have been raped on 02-02-77 by a white male posing as a Vepco man who made entrance to [Victim One's home] under this false pretense. Victim #1 was first and then tied up with Item #4 which was cut with the suspects tool, Victim #1 when wipe herself with item #2,[5] it is suspected that the suspect did wipe himself also and threw the tissue in the trash can which would be in the contents of Item #3.

Id. The document provides the following pertinent identification of the evidence submitted:

> Item #1   One blue bed spread . . . .
> Item #2   One yellow tissue with brown and orange stars. Marked and Identif[i]ed.
> Item #3   Contents of trash can found in master bedroom, consisting of (14) yellow with brown and orange stars, (3) yellow napkins, (1) white and green tissue, (1) white tissue, (1) white and yellow tissue . . . .
> Item #4   One brown electrical cord which was cut from a clock.

Id. (spacing corrected). Another Request for Laboratory Examination contains additional evidence from Diane. That document describes, in pertinent part, the evidence submitted for examination as follows:

---

[5] As discussed later, Item #2 is not the tissue Magano used to wipe off Vickie, which he then pocketed as he was departing the apartment. Rather, the tissue identified as Item #2 is not mentioned in the trial transcript.

```
5.   PERK KIT ATTACHED
6.   One box containing clothing of victim:
          item #a. one flannel[] shirt . . . .
          item #b. one pair blue jeans . . . .
          item #c. one pair ladies panties . . . .
```

Petition for a Writ of Actual Innocence, Request for Laboratory

Examination Submitted by Sgt. J. Sutton, In re Magano, No. 091760

(Va. filed June 22, 2009)(spacing corrected).[6]

The Certificate of Analysis, dated March 21, 1977 ("the March

21, 1977 Certificate of Analysis"), for the above evidence

reflected, in pertinent part:

| | |
|---|---|
| Item 2 | Spermatozoa were identified in stains on the tissue. Further tests on these stains indicate the secretions are type AB. |
| Item 3 | No evidence of seminal fluid was found on any of the items. |
| Item 4 | No examination conducted. |
| Item 5 | No evidence of seminal fluid was found on the smears. Tests on the oral swabs indicate the secretions are type A. No foreign hairs were found in the combings. |
| Item 6 | Spermatozoa heads were identified in the stains in the crotch area of the panties. Further tests on these stains indicate the secretions are type A. |

Petition for a Writ of Actual Innocence, Request for Laboratory

Examination at 2, In re Magano, No. 091760 (Va. filed June 22,

2009).[7]

---

[6] There was also a third Request for Laboratory Examination, which reflected that the police had recovered from Magano a "Reddish Brown Vinyl mans jacket." Petition for a Writ of Actual Innocence, Request for Laboratory Report Submitted by Detective J.A. Gilbert, In re Magano, No. 091760 (Va. filed June 22, 2009).

[7] The three Requests for Laboratory Examination and the March 21, 1977 Certificate of Analysis are identified as LAB # 76-15160.

Magano also attached to his Petition for a Writ of Actual Innocence a Certificate of Analysis dated April 10, 2009. Petition for a Writ of Actual Innocence, April 10, 2009 Certificate of Analysis, In re Magano, No. 091760 (Va. filed June 22, 2009). The April 10, 2009 Certificate of Analysis provided the following pertinent results with respect to recent DNA testing of evidence associated with Magano's case:

**Item 2 - Yellow tissue**
- A DNA profile was developed from the sperm fraction.
  - Gerald Magano can not be eliminated.
- A DNA mixture profile was developed from the non-sperm fraction.
  - Without a known DNA profile from [Diane], no conclusions may be reached whether any of these DNA types are attributable to her.
  - Gerald Magano can not be eliminated.

**Item 6 - Clothing from [Diane]**
Panties
- A DNA profile was developed from the non-sperm fraction and a DNA profile was developed from the sperm fraction.
  - Gerald Magano is eliminated from both profiles.

Petition for a Writ of Actual Innocence, April 10, 2009 Certificate of Analysis at 1-2, In re Magano, No. 091760 (Va. filed June 22, 2009).

During the pendency of the Petition for a Writ of Actual Innocence, the Virginia Department of Forensic Science obtained DNA from Diane, Diane's husband, and Vickie. The results of those

11

tests eliminated Diane's husband as the contributor of the sperm fraction on Item 2, the yellow tissue. Motion to Dismiss, Certificate of Analysis at 1, In re Magano, No. 091760 (Va. filed Oct. 21, 2009). Additionally, these tests identified Diane's husband as the contributor of the sperm fraction found in Diane's underpants. Id. at 2.

On April 7, 2010, the Supreme Court of Virginia denied Magano's petition for a writ of actual innocence. In re Magano, No. 091760 (Va. Apr. 7, 2010). In denying Magano's Petition for a Writ of Actual Innocence, the Supreme Court stated:

> Petitioner claims that he is actually innocent of [his] convictions. In support of his petition, he relies on the results of a scientific analysis performed by the Department of Forensic Sciences on April 10, 2009, which determined that petitioner could be eliminated as a contributor to the DNA mixture found on the underpants of one of the victims. The test also determined that petitioner could not be eliminated as [a] contributor to a DNA mixture found on a yellow tissue paper. Based on these test results, petitioner asserts that he is actually innocent and seeks to have his convictions vacated.
> The Court finds that petitioner has failed to allege grounds sufficient to sustain his burden of proof under the statute that, in view of the test results, no rational trier of fact could have found him guilty beyond a reasonable doubt. See Code § 19.2-327.3(A)(viii). The record, including the trial transcripts and exhibits, demonstrates that the 2009 DNA test results are consistent with the proof at trial of petitioner's guilt and corroborate the accounts of the two victims. The record indicates there was no reason for petitioner's DNA to be on the first victim's underpants, as her underpants had been removed before petitioner raped her. The fact that petitioner's DNA was on the tissue paper was consistent with the testimony of both victims that he

12

used a tissue to clean up after he ejaculated on the second victim's stomach.

Id. at 1-2.[8]

C.  **Federal Habeas Proceedings**

On July 20, 2010, Magano executed his § 2254 action and presumably mailed it on the same date to this Court.  By Memorandum Order entered on August 13, 2010, the Court directed Magano to place his request for habeas relief on the standardized form for filing a petition for a writ of habeas corpus under 28 U.S.C. § 2254.  On November 2, 2010, the Court received the present § 2254 Petition from Magano.  In his § 2254 Petition, Magano contends that he is entitled to relief upon the following grounds:

Claim One          The prosecution used known perjured testimony to obtain Petitioner's conviction.
                   At trial (transcript pages 47, 48) victims stated evidence was removed from crime scene by Petitioner in his pocket.  In police evidence report, 76-15160, they stated the same evidence was given to police for testing.  Withholding this evidence at trial deprived [Petitioner] of ability to cross examine obvious conflicts in prosecution witness testimony and bolstering of innocence.

(§ 2254 Pet. 6.)[9]

---

[8] The Supreme Court of Virginia was incorrect when it stated the tissue paper tested for DNA was the tissue Vickie testified that Magano used to wipe off Vickie's stomach after he climaxed. Rather, according to the Request for Laboratory Examination, this tissue was used by Diane to "wipe herself."  (Petition for a Writ of Actual Innocence, Request for Laboratory Examination submitted by Detective R.A. Sullivan, In re Magano, No. 091760 (Va. filed June 22, 2009)).  Regardless of this discrepancy, the presence of Magano's DNA on the tissue recovered from Diane's apartment provides further damning proof of Magano's guilt.

[9] The Court has corrected the capitalization in the quotations to Magano's submissions.

```
Claim Two              The   prosecution   with[h]eld evidence
                  favorable  to  the  defense  in  this  case,  in
                  violation of U.S. Const., 14th Amendment.
                       DFS  Report  76-15160  was  notified,  as
                  available  to  Petitioner,  33  years  after
                  conviction  under  a  post-conviction  testing
                  p r o g r a m    f o r    h u m a n    b i o l o g i c a l
                  evidence  .  .  .  .   This  report  exposed  the
                  conflict  of  the  victim's  trial  testimony
                  concerning a specific tissue, alleged to have
                  been turned in at the crime-scene; but at trial
                  was   said   to   have   been   carried   out   in
                  perpetrator[']s pocket.
```

(§ 2254 Pet. 7-8.)

### III.   LIMITATIONS PERIOD FOR FEDERAL HABEAS RELIEF

The Antiterrorism and Effective Death Penalty Act ("AEDPA")
amended  28  U.S.C.  §  2244  to  establish  a  one-year  period  of
limitation for the filing of a petition for a writ of habeas corpus
by a person in custody pursuant to the judgment of a state court.
Specifically, 28 U.S.C. § 2244(d) provides that:

**(1)**  A  1-year  period  of  limitation  shall  apply  to  an
application for a writ of habeas corpus by a person in
custody pursuant to the judgment of a State court.  The
limitation period shall run from the latest of--
**(A)**      the  date  on  which  the  judgment  became
final  by  the  conclusion  of  direct  review  or  the
expiration  of  the  time  for  seeking  such  review;
**(B)**      the  date  on  which  the  impediment  to
filing  an  application  created  by  State  action  in
violation  of  the  Constitution  or  laws  of  the
United  States  is  removed,  if  the  applicant  was
prevented from filing by such State action;
**(C)**      the  date  on  which  the  constitutional
right  asserted  was  initially  recognized  by  the
Supreme  Court,  if  the  right  has  been  newly
recognized  by  the  Supreme  Court  and  made
retroactively  applicable  to  cases  on  collateral
review; or

> **(D)**     the date on which the factual predicate
> of the claim or claims presented could have been
> discovered through the exercise of due diligence.
> **(2)**   The time during which a properly filed application
> for State post-conviction or other collateral review
> with respect to the pertinent judgment or claim is
> pending shall not be counted toward any period of
> limitation under this subsection.

28 U.S.C. § 2244(d).   Furthermore, when a prisoner's conviction

became final prior to the enactment of AEDPA on April 24, 1996, the

prisoner had a full year after the enactment in which to file a

federal petition for a writ of habeas corpus.   See Hernandez v.

Caldwell, 225 F.3d 435, 439 (4th Cir. 2000).

## IV.   TIMELINESS OF MAGANO'S
## PETITION FOR A WRIT OF HABEAS CORPUS

Pursuant to the Supreme Court's instructions in Jimenez v.

Quarterman, 555 U.S. 113, 121 (2009),[10] Magano's convictions became

final, as that term is defined in 28 U.S.C. § 2244(d)(1)(A), on

Monday, July 11, 1988, the last date to file a petition for appeal

with the Supreme Court of Virginia with respect to his belated

appeal.   Because Magano's convictions became final prior to the

_____

[10] In Jimenez, the Supreme Court stated that,

> where a state court grants a criminal defendant the right
> to file an out-of-time direct appeal during state
> collateral review . . . . 'the date on which the
> judgment became final by the conclusion of direct review
> or the expiration of the time for seeking such review'
> must reflect the conclusion of the out-of-time direct
> appeal, or the expiration of the time for seeking review
> of that appeal.

555 U.S. at 121 (quoting 28 U.S.C. § 2244(d)(1)(A)).

passage of the AEDPA, Magano had until April 24, 1997 to file his federal petition for a writ of habeas.  See Hernandez v. Caldwell, 225 F.3d 435, 439 (4th Cir. 2000).  Magano did not file his federal petition until more than thirteen years after that date.  Thus, the § 2254 Petition is barred, unless Magano is entitled to a belated commencement of the limitation period under 28 U.S.C. § 2244(d)(1)(B)-(D) or equitable tolling of the limitation period.

### A.    Belated Commencement

Magano suggests that he is entitled to a belated commencement of the limitation period because state officials only recently disclosed "evidence report 76-15160." (§ 2254 Pet. 14.)  Under § 2244(d)(1)(D), the limitation period begins to run when the petitioner knows, or through due diligence could have discovered, the factual predicate for a potential claim.  See Schlueter v. Varner, 384 F.3d 69, 74 (3rd Cir. 2004); Owens v. Boyd, 235 F.3d 356, 359 (7th Cir. 2000).  "[T]he petitioner bears the burden of proving that he exercised due diligence, in order for the statute of limitations to begin running from the date he discovered the factual predicate of his claim, pursuant to 28 U.S.C. § 2244(d)(1)(D)."  DiCenzi v. Rose, 452 F.3d 465, 471 (6th Cir. 2006) (citing Lott v. Coyle, 261 F.3d 594, 605-06 (6th Cir. 2001)).

A habeas applicant who "merely alleges that [he or she] did not actually know the facts underlying his or her claim does not" thereby demonstrate due diligence.  In re Boshears, 110 F.3d 1538,

1540 (11th Cir. 1997).  Rather, to obtain a belated commencement of the limitation period the applicant must explain why a reasonable investigation would not have unearthed the facts prior to the date under which the limitation period commenced under 28 U.S.C. § 2244(d)(1)(A).  See id. at 1540-41 (rejecting petitioner's assertion that he could not have discovered his new Brady claim prior to filing his first § 2254 petition).  Thus, Magano must demonstrate that a reasonable investigation during the thirty years following his arrest in 1977 would not have unearthed the reports he relies upon to support his current claims for habeas relief. See id.  This he fails to do.

At the time of his trial, Magano knew that the police had processed the scene of the crime for fingerprints and "to collect additional evidence." (Trial Tr. 113.)  Nevertheless, at trial the prosecution had not introduced any forensic evidence, such as fingerprints or other biological evidence, tying Magano to the crime scene.  Thus, to the extent Magano wished to challenge the fact that he was not present at the scene of the crime, a reasonable investigation would have sought access to any forensic evidence.  Magano never made any request for such evidence for almost three decades.  When Magano requested access to the material, the Virginia Department of Forensic Science readily turned the material over to him.

"Due diligence . . . does not require a prisoner to undertake repeated exercises in futility or to exhaust every imaginable option." <u>Anjulo-Lopez v. United States</u>, 541 F.3d 814, 818 (8th Cir. 2008) (<u>citing</u> <u>Aron v. United States</u>, 291 F.3d 708, 712 (11th Cir. 2002)). Due diligence, however, "at least require[s] that a prisoner make <u>reasonable</u> efforts to discover the facts supporting his claims." <u>Id.</u> (<u>citing</u> <u>Aron</u>, 291 F.3d at 712). Moreover, in evaluating a petitioner's diligence, the Court must be mindful that the "statute's clear policy calls for promptness." <u>Johnson v. United States</u>, 544 U.S. 295, 311 (2005).[11]

Magano fails to demonstrate that, acting with due diligence, he could not have discovered the facts supporting his present claims in the thirty years following his arrest in 1977. <u>Wood v. Spencer</u>, 487 F.3d 1, 5-6 (1st Cir. 2007) ("[W]hen the facts pertinent to a petitioner's <u>Brady</u> claim could in the exercise of due diligence have been discovered at an earlier date, that date marks the commencement of the . . . limitations period." (<u>citing</u> <u>Daniels v. Uchtman</u>, 421 F.3d 490, 492 (7th Cir. 2005))); <u>Nashar v.</u>

_____

[11] In <u>Johnson</u>, the petitioner sought a belated commencement of the limitation period to file a § 2255 motion until the date that he successfully invalidated a prior state court conviction that had been used to enhance his federal sentence. 544 U.S. at 298-301. The Supreme Court noted that the petitioner had not exhibited the requisite diligence where he waited over twenty-one months after his federal conviction became final before he challenged "the predicate for enhancement by filing his state habeas petition." <u>Id.</u> at 311. The Supreme Court observed that the petitioner's pro se status and "procedural ignorance" were no excuse for his "prolonged inattention." <u>Id.</u>

United States, Nos. 3:10cv92-02-V, 3:06CR84-V, 2010 WL 966002, at
*3 (W.D.N.C. Mar. 12, 2010) (refusing to order belated commencement
to the date that the government requested certain documents to be
unsealed where petitioner fails to explain why he did not request
that the documents be unsealed sooner).   Magano's prolonged
"inaction is incompatible with a finding of due diligence.  Hence,
[Magano] cannot avail himself of the exception limned in section
2244(d)(1)(D)."  Wood, 487 F.3d at 5-6  (citing Daniels, 421 F.3d
at 492; Schlueter, 384 F.3d at 74).

### B.   Equitable Tolling

The Supreme Court has "made clear that a 'petitioner' is
'entitled to equitable tolling' only if he shows '(1) that he has
been pursuing his rights diligently, and (2) that some
extraordinary circumstance stood in his way' and prevented timely
filing."  Holland v. Florida, 130 S. Ct. 2549, 2562 (2010) (quoting
Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005).  An inmate asserting
equitable tolling  "'bears a strong burden to show specific facts'"
which demonstrate that he fulfills both elements of the test.  Yang
v. Archuleta, 525 F.3d 925, 928 (10th Cir. 2008) (quoting Brown v.
Barrow, 512 F.3d 1304, 1307 (11th Cir. 2008)).  As reflected above,
Magano fails to demonstrate that he exercised the requisite
diligence in seeking to uncover the facts that support his present
claims for habeas relief.  Accordingly, Magano fails to demonstrate
that he is entitled to equitable tolling simply because the

19

prosecution allegedly failed to turn over the pertinent forensic evidence at the time of his trial.

Magano also suggests that the Court should address the merits of his claims because he is actually innocent.  Neither the Supreme Court of the United States nor the United States Court of Appeals for the Fourth Circuit has specifically addressed whether a petitioner's alleged "actual innocence" provides a basis for excusing a petition for not complying with § 2244(d)'s limitation period.  Both those courts, however, have indicated that a petitioner's alleged innocence is not relevant to the issue of equitable tolling.  See Holland, 130 S. Ct. at 2562 ("[A] 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." (quoting Pace, 544 U.S. at 418)); Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2003) (discussing relevant factors for equitable tolling).  "Nevertheless, before addressing this difficult question, the Court should first consider whether [the petitioner] has made a sufficient showing of actual innocence." Carter v. Virginia, No. 3:09CV121-HEH, 2010 WL 331758, at *3 (E.D. Va. Jan. 26, 2010) (citing Robinson v. Johnson, No. 3:08cv00789, 2009 WL 2447939, at *3 (E.D. Va. Aug. 6, 2009)).  As explained below, even if an actual innocence exception existed, the evidence submitted by Magano falls far short of establishing his innocence.

20

### 1. Standard for a Gateway Claim of Actual Innocence

"Claims of actual innocence, whether presented as freestanding ones, see Herrera v. Collins, 506 U.S. 390, 417 (1993), or merely as gateways to excuse a procedural default, see Schlup v. Delo, 513 U.S. 298, 317 (1995), should not be granted casually." Wilson v. Greene, 155 F.3d 396, 404 (4th Cir. 1998) (parallel citations omitted). Here, the Court reviews Magano's claim under the more lenient standard for gateway claims because Magano's actual innocence claim would allow the Court to consider his otherwise time-barred constitutional claims. A gateway claim requires "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Schlup, 513 U.S. at 324 (emphasis added). "Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." Id.

If a petitioner meets the burden of producing new, truly reliable evidence of his innocence, the Court then considers "'all the evidence,' old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under 'rules of admissibility that would govern at trial'" and determines whether the petitioner has met the standard for a gateway claim of innocence. House v. Bell, 547 U.S. 518, 538 (2006) (quoting Schlup, 513 U.S. at 327-28). The Court must determine "whether 'it

is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" <u>Sharpe v. Bell</u>, 593 F.3d 372, 377 (4th Cir. 2010) (<u>quoting</u> <u>Schlup</u>, 513 U.S. at 327-28).

## 2. Magano's Evidence of His Innocence

Magano's new evidence of his innocence arises from the tissue identified as Item 2 in the March 21, 1977 Certificate of Analysis. Magano asserts that his blood type is O+. Magano further notes that "<u>none of Petitioner's blood type—O-positive—was on the original tested tissue</u> reported as item #2 in the DFS 76-15160 serology report." (§ 2254 Pet. Ex. 6, at 3.) Magano asserts that because the March 21, 1977 Certificate of Analysis reflects that stains on this tissue indicate the secretions are type AB his innocence is established.[12] While there remains some question as to the source of the type AB secretions noted in the March 21, 1977 Certificate of Analysis,[13] there remains no reasonable doubt as to Magano's guilt.

First, Magano advances no plausible explanation as to why his DNA was found on the tissue that was recovered from Diane's

---

[12] For purposes of this Memorandum Opinion, the Court assumes the Certificate of Analysis is referring to blood types.

[13] For example, given that Magano forced Diane and Vickie to perform sexual acts upon each other, it is possible that Vickie is the source of the type AB secretions noted on the March 21, 1977 Certificate of Analysis. Indeed, the most recent Certificate of Analysis reflects that a DNA profile attributable to Vickie is present on the tissue. Motion to Dismiss, Certificate of Analysis at 1, <u>In re Magano</u>, No. 091760 (Va. filed Oct. 21, 2009).

apartment.[14] Moreover, the evidence of Magano's guilt from the trial remains overwhelming. By his own admission, shortly before Diane and Vickie were raped, Magano was prowling the parking lot outside of Diane's apartment with a strong sexual desire to have a woman besides his wife. Thereafter, according to both Diane and Vickie, Magano raped them and forcibly sodomized them. Diane and Vickie's identification of Magano was corroborated by the presence of a clipboard in Magano's car and Magano's possession of a jacket similar to that worn by the assailant. Indeed, Magano admitted to the police and Major Ramon E. de Arrigunaga that he had sex with the victims. Given the foregoing evidence, any "reasonable juror would [still] have found petitioner guilty beyond a reasonable doubt.'" Sharpe, 593 F.3d at 377 (quoting Schlup, 513 U.S. at 327-28). Magano fails to demonstrate that he is actually innocent.

## V. CONCLUSION

Accordingly, Respondent's Motion to dismiss (Docket No. 14) will be GRANTED. Magano's Motion for Summary Judgment (Docket No. 11) will be DENIED. The petition for a writ of habeas corpus will be DENIED. The action will be DISMISSED. A certificate of appealability will be DENIED.[15]

---

[14] Magano makes the palpably incredible claim that, after he was arrested, the police retrieved a tissue from his home and substituted it for the tissue that was listed as Item 2 on the Request for Laboratory Report dated February 3, 1977. (§ 2254 Pet. Ex. 6, at 7.)

[15] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability

The Clerk is DIRECTED to send a copy of this Memorandum Opinion to Magano and counsel of record.

An appropriate Order shall issue.

/s/  _REP_

Robert E. Payne
Senior United States District Judge

Date: _September 13, 2011_
Richmond, Virginia

---

("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). For the reasons stated above, Magano has not satisfied this standard.